Edward KENNEDY, Terrence Jostes and John Hluska, Appellants–Plaintiffs,

v.

TRI–CITY COMPREHENSIVE COMMUNITY MENTAL HEALTH CENTER, INC., and Bryan Pajor, Appellees–Defendants.

No. 64A03–9104–CV–101.

Court of Appeals of Indiana,
Third District.

April 13, 1992.

Saul I. Ruman, David W. Holub, David M. Hamacher, Ruman, Clements & Tobin, P.C., Hammond, for appellants-plaintiffs.

Daniel A. Gioia, Kathleen M. Maicher, Spangler, Jennings & Dougherty, P.C., Merrillville, for appellees-defendants.

GARRARD, Judge.

*The Facts*

The plaintiffs, Edward Kennedy, Terrence Jostes and John Hluska (police officers) were police officers for the Town of Munster, Indiana. On April 10, 1988 they responded to a call for assistance made by personnel at Frederick House, a residential care facility operated by Tri–City Comprehensive Community Mental Health Center, Inc. (Tri–City). The affidavit of Officer Jostes relates that upon arrival at Frederick House, an employee of Tri–City advised them that a resident, Bryan Pajor (Pajor), had caused a problem. The employee reported to them that Pajor had thrown his medicine and was spitting on the floor and walls. The police officers proceeded into Pajor's bedroom where Pajor was found lying on his back, in bed, covered with a blanket. They uncovered Pajor to assure themselves that he had no hidden weapons. Pajor had on no clothes and his speech was noted to be incoherent. Pajor complied with the police officers' request to put his pants on. He then stood up and proceeded toward his bedroom door. As Pajor attempted to walk past the police officers, Officer Jostes reached for Pajor's upper right arm. Pajor turned toward Officer Hluska and a scuffle ensued. In their efforts to subdue Pajor, the police officers were injured.

*Procedural History*

On November 4, 1988 the police officers filed a complaint in the Lake County Superior Court against Tri–City and Pajor. Venue was later changed to Porter County. By an amended complaint, the police officers alleged that Tri–City's negligent, wanton, willful and/or reckless conduct toward them resulted in their being injured by Pajor. On April 2, 1990, Tri–City moved for summary judgment, asserting that the so-called "Fireman's Rule" barred the police officers' claim. On December 7, 1990 the trial court found the rule applicable and entered summary judgment for Tri–City. The police officers appeal the trial court's ruling.

*Standard of Appellate Review*

We apply the same standard in reviewing the granting of summary judgment as does the trial court. *Sports Bench, Inc. v. McPherson* (1987), Ind.App., 509 N.E.2d 233, 234. Summary judgment proceedings, as a test of the law of the case, offer the means of determining the existence of genuine issues of material fact that require trial. Only if no genuine issue as to material facts exist *and* the moving party is, as a matter of law, entitled to a judgment, is the motion to be granted. *Id.* See also Ind. Rules of Procedure, Trial Rule 56(C). We view all facts asserted by the non-moving party as true and any doubts are resolved in the non-movant's favor. *Koop v. Bailey* (1986), Ind.App., 502 N.E.2d 116, 117. When, as here, there are no genuine issues relative to material facts, we must determine whether the trial court properly applied the law. *Id.* We must affirm the grant of summary judgment if any grounds exist that will sustain the trial court's ruling. *Douglass v. Irvin* (1990), Ind., 549 N.E.2d 368, 371.

*The Fireman's Rule*

This court has stated that:

[t]he rule basically provides that professionals, whose occupations by nature expose them to particular risks, may not hold another negligent for creating the situation to which they respond in their professional capacity.

*Koehn v. Devereaux* (1986), Ind.App., 495 N.E.2d 211, 215. The rule has been applied to police officers. *Koop, supra,* 502 N.E.2d at 118. Police officers, in their official capacities, are exposed to many risks by the very nature of their occupations. One risk, in particular, arises in the potential for physical altercations and corresponding injury in responding to residential disturbances. The police officers were on duty and, therefore, were acting within their official professional capacities. Thus, as to the police officers under the facts of this case, both elements of the rule were met.

The police officers argue that the Fireman's Rule is no longer viable in Indiana. They contend that a recent case on land entrant status, the Comparative Fault Act, public policy, and traditional tort law defenses adequately protect premise owners and serve to vitiate the rule. We do not agree.

*Premise Liability and the Fireman's Rule.*

We do not set out to develop a blanket rule. Research on the Fireman's Rule reveals that the rationale which underlies it is anything but clear. What is clear, however, is that once the facts of the case are set out and the parties' relationships defined, the rule as applied to the facts has yielded consistent results.

The police officers argue that because they were called by Tri–City, the case of *Burrell v. Meads* (1991), Ind., 569 N.E.2d 637, calls for their treatment as invitees. In *Burrell,* our supreme court decided "the question of what duty an Indiana landowner or occupier owes to his *social guests* to protect them from physical harm while they are on his premises." (emphasis added). *Burrell,* 569 N.E.2d at 638. The police officers, under the facts of this case, were not the social guests of Tri–City. More importantly, they were not the social

guests of Pajor. When they entered his bedroom, they were there solely upon their authority as police officers. In their argument, that they ought to be treated as invitees, the police officers ignore this fact. Yet it is this fact that secures their status as licensees. The court in *Koop, supra,* and *Pallikan v. Mark* (1975), 163 Ind.App. 178, 322 N.E.2d 398, declined invitations to classify on-duty police officers as invitees. *See Koop, supra,* 502 N.E.2d at 118, n. 1. Under the facts of this case, we must do the same.

■ There are deficiencies inherent in a syllogistic approach to the analysis of the Fireman's Rule when applied to various factual situations. However, as already noted, when we apply the text of the rule to the facts of the Indiana cases involving police officers who are injured by third persons, there are consistent results. When the professional public safety officer, whose occupation by nature exposes him to particular risks, was injured by a third person while conducting himself in his professional capacity, he was precluded from recovering, from the party alleged to be negligent in creating the circumstances that required his presence, for injuries resulting from a risk inherent in, and foreseeable as, part of his duties as a public safety officer. *See* for example, *Sports Bench v. McPherson* (1987), Ind.App., 509 N.E.2d 233 (Deputy sheriffs injured while acting within their professional capacity. Court applied Fireman's Rule to reverse trial court's denial of property owner's motion for summary judgment.), and *Koop v. Bailey* (1986), Ind.App., 502 N.E.2d 116 (Police officer member of a SWAT team was shot after responding to a situation where negotiations with an armed and disturbed man had broken down. SWAT team members were trained to serve precisely in that fashion.) Under the guidance of *Sports Bench, Inc.* and *Koop* we find the facts of this case to be particularly amenable to the application of the Fireman's Rule. Therefore, the trial court's granting of Tri–City's motion for summary judgment, dismissing the police officers' negligence claim, was proper.

The police officers further contend that Indiana's Comparative Fault Act [1] precludes the application of the Fireman's Rule, as an incurred risk, to bar recovery. They state that courts in other jurisdictions have reached this conclusion, but cite to cases only from California and Oregon. The California Court of Appeals did, in the case of *Bartholomew v. Klingler Co.* (1975), 53 Cal.App.3d 975, 126 Cal.Rptr. 191, conclude that comparative negligence precluded the Fireman's Rule from operating as a complete bar to recovery. The California Supreme Court, however, reaffirmed the Fireman's Rule to bar an action by a police officer injured by third persons when he responded to a call in the line of duty in the case of *Walters v. Sloan* (1977), 20 Cal.3d 199, 142 Cal.Rptr. 152, 571 P.2d 609. Oregon appears to be the only state to recently consider and reject the rule. In the case of *Christensen v. Murphy* (1984), 296 Or. 610, 678 P.2d 1210, the Oregon Supreme Court held "as a result of statutory abolition of implied assumption of risk ... that the 'fireman's rule' is abolished in Oregon as a rule of law ..." *Christensen,* 678 P.2d at 1218.

We will refrain from counting the jurisdictions accepting or rejecting the rule as a means of determining whether it will apply in this state or not [2]. In the absence of legislative abolition of the rule and the presence of prior case law, we find the Fireman's Rule alive and well in Indiana. This is especially true under the facts of this case. The rule's scope and our application is narrow and it would not apply equally to all defendants in all cases. In considering the scope of the rule we recognize that certain factual situations, not present here, have led to the development of exceptions to the rule in a number of states employing it. *See Kreski v. Modern Wholesale Electric Supply* (1987), 429 Mich. 347, 415 N.W.2d 178, 188 (considerations of fairness and public policy compelled the court to adopt the rule for Michigan). The *Kreski* court found the rule applicable in situations where there was no wrongdoing or negligence after the plaintiffs were on the scene; the injuries occurred when the premises were not open to the public for business; the owners did not mislead the plaintiffs regarding the activities being carried on; the plaintiffs were warned of the danger; or where there was no intentional or illegal act on the part of the owner. *Kreski,* 415 N.W.2d at 188–189. *See also Mahoney v. Carus Chemical Co.* (1986), 102 N.J. 564, 510 A.2d 4 (Fireman's Rule would not protect defendant guilty of willful, wanton misconduct); *Lipson v. Superior Court* (1982), 31 Cal.3d 362, 182 Cal.Rptr. 629, 644 P.2d 822 (rule would not apply where there was an independent act of misrepresentation by the owner); *London Iron & Metal Co. v. Abney* (1980), 245 Ga. 759, 267 S.E.2d 214 (owner owes to the public service officer the duty to warn or protect against hidden perils); *Armstrong v. Mailand* (1979), Minn., 284 N.W.2d 343 (public safety officers do not assume risks that are hidden or unanticipated); *Court v. Grzelinski* (1978), 72 Ill.2d 141, 19 Ill.Dec. 617, 379 N.E.2d 281 (rule could not be extended to apply in products liability case); *Scheurer v. Trustees of the Open Bible Church* (1963), 175 Ohio St. 163, 192 N.E.2d 38 (rule would not apply if defendant's violation of a statutory duty caused plaintiff's injury); *Shypulski v. Waldorf Paper Products Co.* (1951), 232 Minn. 394, 45 N.W.2d 549 (Fireman's Rule inapplicable if the defendant failed to warn the public safety officer of hidden dangers, of which the defendant had knowledge and the opportunity to disclose).

The police officers argue that there exists no legitimate public policy basis to justify treating fire fighters and police officers differently from other public employees, *i.e.,* mail carriers and trash collectors. The *Kreski* court wrote:

> The policy arguments for adopting a fireman's rule stem from the nature of the service provided by fire fighters and

---

1. Indiana Code section 34–4–33–1 *et seq.*

2. *See Winn v. Frasher* (1989), 116 Idaho 500, 777 P.2d 722 (refraining from "nose counting" the jurisdictions, and affirming the Fireman's Rule on public policy grounds).

police officers, as well as the relationship between these safety officers and the public they are employed to protect. It is beyond peradventure that the maintenance of organized society requires the presence and protection of fire fighters and police officers. The fact is that situations requiring their presence are as inevitable as anything in life can be. It is apparent that these officers are employed for the benefit of society in general, and for people involved in circumstances requiring their presence in particular.

\*   \*   \*   \*   \*   \*

The public hires, trains, and compensates fire fighters and police officers to deal with dangerous, but inevitable situations.

\*   \*   \*   \*   \*   \*

The very nature of police work and fire fighting is to confront danger. The purpose of these professions is to protect the public. It is this relationship between police officers, fire fighters and society which distinguishes safety officers from other [public] employees. Thus, safety officers are not 'second-class citizens,' but, rather, are 'different' than other [public] employees.

*Kreski*, 415 N.W.2d at 186–187. Our application of the rule, in the instant case, is firmly supported by similar notions of public policy.

■ Notwithstanding the viability of the Fireman's Rule in Indiana, the police officers argue that it should not be applied in the instant case under two of the recognized exceptions. We agree that willful, wanton or intentional acts or a violation of a statute or ordinance that establishes a duty are recognized exceptions to the rule. The posture of this case is, however, one where summary judgment has been granted. The police officers were not able to rest upon the mere allegations of their amended complaint, but were bound to come forward with factual allegations sufficient to demonstrate genuine issues of material fact. Trial Rule 56(E). *See also Koop, supra,* 502 N.E.2d at 118. On their allegation of willful and wanton conduct on the part of Tri–City, the police officers were required to set out facts that demonstrated a purposeful design on the part of Tri–City. *Koop,* 502 N.E.2d at 118. This was not done. The police officers also contend that the "violation of statute or ordinance" exception ought to apply. They do not, however, set out a statute or ordinance that was violated. We will not accept their invitation to extend the exception to include the alleged breach of a promise made to the board of zoning appeals in the instant case. The board of zoning appeals, in granting a special use permit to Tri–City, specifically found that its concern was for the need to protect the health, safety and welfare of the neighbors of Frederick House, residents of the neighborhood and the general public. Record at 63, Exhibit B, p. 4. That determination, however, did not impose upon Tri–City a legal duty to protect the police officers. Their contentions to the contrary are not well taken.

■ The police officers contend that Tri–City assumed a duty of care toward them. This contention is unsupported by the record. To prevail, police officers must present evidence that Tri–City actively undertook the duty to protect police officers. That evidence must show that public safety officials relinquished control over that aspect of police officer safety in favor of Tri–City. *Lather v. Berg* (1988), Ind.App., 519 N.E.2d 755, 766. There was no fact or reasonable inference arising from the evidence that would establish that Tri–City assumed a duty, gratuitously or otherwise, relative to police officers' safety.

The police officers' additional contention that Tri–City had a duty to control Pajor does not take into consideration their status as public safety officers. The police officers equate Pajor with an insanely violent, dangerous, homicidal maniac. Nothing in the record supports such a contention.

The police officers, lastly, simply state that Tri–City had a duty as a landowner. We do not agree with their pronouncement that the nature and extent of that duty should be determined by a jury. *See Bearman v. University of Notre Dame* (1983),

Ind.App., 453 N.E.2d 1196 (the existence of a duty is a question of law).

The police officers, while acting in their official capacities, responded to a call for assistance from the personnel at Frederick House. They were apprised of the situation. They went into Pajor's bedroom. They found him lying in his bed. At their request he got up and partially dressed. When he was about to leave the room a scuffle ensued and police officers were injured. Absent any evidence that would demonstrate conduct on the part of Tri-City that would invoke an exception to the Fireman's Rule, we find the facts of this case particularly suited to invoke the Fireman's Rule. We, therefore, affirm the trial court's judgment.

Affirmed.

HOFFMAN, P.J., and STATON, J., concur.