61 F.3d 905
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
DEBORAH O, a minor By and Through THOMAS O, Plaintiff-Appellant,
v.
LAKE CENTRAL SCHOOL CORPORATION, Lake Central School
Corporation Board of Trustees, Howard Marshall,
Jr., et al., Defendants-Appellees.
 No. 94-3804.
 United States Court of Appeals, Seventh Circuit.
 Argued May 12, 1995.
Decided July 21, 1995.
 
 Before Bauer, Manion and Kanne, Circuit Judges.
 
 ORDER
 
 1
 Deborah O., a student and band member at Lake Central High School, was involved in a sexual encounter with her band director, Matthew Barmore. O. sued, among others, the Lake Central School Corporation, School Superintendent Dr. Thomas Roman, and Barmore for alleged violations of 42 U.S.C. Sec. 1983, Title IX, and state negligence law. The district court dismissed or granted judgment as a matter of law on most claims. On the remaining claims a jury found for the defendants and against O.. On appeal, O. challenges three orders of the district court granting judgment as a matter of law in favor of the School Corporation, Dr. Roman and Barmore. We affirm the district court.
 
 I. Background
 
 2
 Matthew Barmore was the band director at Lake Central High School in Lake County, Indiana from July of 1989 until December of 1991. O. was one of his students. In July of 1991, when O. was 17 years old, that relationship changed. The parties dispute the exact nature of this change (and it is ultimately unimportant for purposes of this appeal), but it appears that Barmore and O. became sexually involved with each other. Barmore claims that he fell in love with O. and that their relationship was consensual. O. claims that she was stalked, sexually harassed, and raped. Whatever their relationship, however, both of them went to considerable lengths to conceal their behavior. Both denied any involvement with the other, to parents and school officials alike, when rumors of the liaison surfaced. Barmore was eventually forced to resign his teaching position. O. left school but was able to complete her education through homebound instruction and correspondence courses.
 
 
 3
 On June 7, 1993, O. sued numerous persons directly and indirectly involved.[1] O. alleged violations of 42 U.S.C. Sec. 1983, Title IX, and state negligence law. Defendants moved to dismiss several of these claims and also moved for summary judgment and judgment as a matter of law with regard to others. The district court granted many of these motions, leaving just two issues for the jury: a claim against Barmore under Sec. 1983 for sexual harassment or abuse and a claim against the school and other related defendants for negligence in failing to supervise and train school personnel to detect sexual abuse. The jury returned a verdict in favor of defendants.
 
 II. Analysis
 
 4
 On appeal O. challenges only three of the district court's rulings: (1) the district court's grant of judgment as a matter of law in favor of the School Corporation and Dr. Thomas Roman under Sec. 1983, (2) the district court's grant of judgment as a matter of law in favor of the School Corporation under Title IX, and (3) the district court's grant of judgment as matter of law in favor of Barmore under state negligence law. We review these challenges de novo. After considering all of the evidence and all reasonable inferences in the light most favorable to O., we will uphold the verdict of the district court unless we find that O. presented sufficient evidence for the jury to return a verdict in her favor. Phares v. Gustafsson, 856 F.2d 1003, 1006 (7th Cir. 1988).
 
 
 5
 We turn first to O.'s Sec. 1983 challenge. She charges that the district court erred when granting judgment as a matter of law in favor of the School Corporation and Dr. Thomas Roman on her Sec. 1983 claim. Specifically, she alleges that these defendants failed to train school employees to recognize and report incidents of sexual harassment or abuse. In City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989), he Supreme Court recognized that in limited circumstances the failure to train can form the basis for governmental liability under Sec. 1983. However, the governmental entity itself, by its failure, must have caused the alleged constitutional violation. Id. at 385 (respondeat superior or vicarious liability are not available under Sec. 1983). Where the entity's inaction is the alleged source of the injury, liability will attach only if that inaction amounts to deliberate indifference to the deprivation of the constitutional right involved. Id. at 388.
 
 
 6
 Under Canton, there are two ways in which the entity's failure to train can meet the above standard. First, deliberate indifference can be shown if, in light of the duties assigned to specific employees, the need for more or different training is so obvious and the inadequacy so likely to result in the violation of constitutional rights that the entity can reasonably be said to have been deliberately indifferent to the need for such training. Id. at 390 and n.10 (obvious need to train police officers in the use of deadly force); Cornfield by Lewis v. Consolidated High School Dist. No. 230, 991 F.2d 1316, 1327 (7th Cir. 1993). Liability here must be based on a high degree of culpability - a finding that the entity had actual or constructive notice that a particular omission is likely to result in a constitutional violation. Cornfield, 991 F.2d at 1327. Second, deliberate indifference can be shown where the need is not necessarily obvious, but the pattern or frequency of constitutional violations would put the entity on notice that its employees' responses to a recurring situation are insufficient to protect the constitutional rights involved. Canton, 489 U.S. at 390 n.10; Cornfield, 991 F.2d at 1327. In other words, the entity must have acquiesced in a pattern of constitutional violations. Cornfield, 991 F.2d at 1327. Under either theory, a plaintiff must prove that the identified deficiency in training actually caused the ultimate injury. Canton, 489 U.S. at 391.
 
 
 7
 O. charges here that the School Corporation and Dr. Roman were deliberately indifferent to her constitutional right to be free from sex discrimination under the equal protection clause of the Fourteenth Amendment by failing to train school employees to recognize and report sexual harassment or abuse. Sexual harassment, as a general matter, is an actionable constitutional violation under Sec. 1983. Bohen v. City of East Chicago, Ind., 799 F.2d 1180, 1185 (1986) (federal equal protection clause contains right to be free from gender discrimination, including sexual harassment by a state employer, and is actionable under Sec. 1983). But we need not decide whether O.'s allegations in this case constitute an actionable constitutional claim. For even if a constitutional violation existed on these facts, she has not demonstrated that the defendants had notice of it under either of the two alternatives mentioned above. Without such notice, the school cannot be held liable for a failure to train its employees. See Thelma D. by and through Delores A. v. Board of Educ. of City of St. Louis, 934 F.2d 929, 932-35 (8th Cir. 1991) (elementary students who alleged sexual abuse by their teacher could not hold school board liable absent knowledge of teacher's misconduct or showing that board had notice that its procedures were inadequate and likely to result in a violation of constitutional rights).
 
 
 8
 O. here attempts to demonstrate from the evidence that the School Corporation and Dr. Roman had notice as required by Canton. She however fails under both alternatives. First, there is no evidence to suggest that sexual harassment or abuse by faculty or staff members is so likely to occur at Lake Central High School that a program must be implemented to detect and deal with it. There was certainly no obvious problem. O. as much as admits this by asking that the school implement a program to "recognize and respond to abuse and harassment." And it would be oxymoronic to allege that there is an obvious hidden problem requiring a close watch over private activity in order to prevent violations of students' constitutional rights. O. has not alleged that the faculty and staff members at this school are inherently predatory.
 
 
 9
 O.'s only real hope therefore is to demonstrate that there was a pattern of constitutional violations putting the School Corporation and Dr. Roman on notice. She fails here as well. She points to only two incidents - one consisting of an incident during the 1983-84 school year at Lake Central Elementary School where a teacher had engaged in improper touching, and a second incident involving an alleged rape of one student by another student on a non-school sponsored trip to Indianapolis. These incidents are not only unrelated to the situation in this case, but also do not establish the kind of "recurrent situations" required to give school officials proper notice of a constitutional problem. We find that the district court was correct in granting judgment as a matter of law on this claim.
 
 
 10
 Next, O. claims that the district court erred in granting judgment as a matter of law in favor of lake Central School Corporation on her claim for sex discrimination under Title IX. Title IX places on schools the duty not to discriminate on the basis of sex. Franklin v. Gwinnett County Public Schools, 112 S.Ct. 1028, 1037 (1992). This includes situations where "a supervisor sexually harasses a subordinate because of the subordinate's sex." Id. (citing Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986) (internal quotations omitted)). In addition, in order to establish this claim a plaintiff must establish that the School Corporation itself intentionally discriminated on the basis of the plaintiff's sex. Cannon v. University of Chicago, 648 F.2d 1104, 1109 (7th Cir. 1981) (rejecting argument that disparate impact theory alone was sufficient to establish a violation of Title IX); Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 72 (1986) (employers are not automatically liable for the sexual harassment of their employees). This requires, at the very least, that the School Corporation knew or should have known about the harassment and yet failed to take appropriate remedial action. Saxton v. American Tel. & Tel. Co., 10 F.3d 526, 535 (7th Cir. 1993) (quoting Guess v. Bethlehem Steel Corp., 913 F.2d 463, 465 (7th Cir. 1990)) (in the context of Title VII).
 
 
 11
 On this record, O. has failed to demonstrate that the School Corporation knew about or should have known about the sexual activities that occurred between herself and Barmore in time to take remedial action (and this only if she could prove that Barmore made unwanted advances). Read v. Shepard, 939 F.2d 484, 491 (7th Cir. 1991) (quoting Meritor, 477 U.S. at 68) (gravamen of any sexual harassment claim is that the alleged sexual advances were "unwelcome"). There is no evidence in the record that school officials knew anything of this whole affair until they received a call from Child Protective Services on November 13, 1991 informing them that O. was reported to be having an affair with Barmore. Up to that point no one suspected a sexual relationship between the two of them (both O. and Barmore has taken active steps to hide their relationship). It is true that rumors had surfaced prior to this call regarding the couple, but school officials suspected only a school-girl infatuation on the part of O.. After school officials talked to Barmore and expressed concern about these rumors, Barmore spoke to the students and informed them that the rumors were not true. School officials concluded that there was no improper conduct behind the rumors.
 
 
 12
 After receiving the call from Child Protective Services, the school took steps to investigate. Among other things, they interviewed both O. and Barmore. O. vehemently denied any sexual conduct and explained that Barmore had merely helped her with some personal problems. Barmore also vehemently denied any sexual intentions toward or conduct with O.. School officials then spoke with O.'s father and stepmother who testified that they observed nothing out of the ordinary during this period of time. It was only after receiving another call (this time anonymous) informing school officials that O. was pregnant, that O. admitted to having sex with Barmore. Barmore immediately submitted his resignation.
 
 
 13
 From our review of these facts, there is nothing upon which to place employer liability. The School Corporation did not have notice that Barmore was sexually harassing O. (supposing, of course, that she could show that the facts demonstrate actionable harassment) in time to have done anything about it. And once they were notified of a problem, school officials took prompt steps to investigate. For this reason, there was no error in granting judgment as a matter of law in favor of the School Corporation on this issue.
 
 
 14
 Third, O. contests the district court's decision to grant judgment as a matter of law on her state negligence claim against Barmore. To support this claim, O. needed to produce some evidence that Barmore acted negligently, that is, that his actions arose from "inattention, thoughtlessness or heedlessness." Koop v. Bailey, 502 N.E.2d 116, 118 (Ind.App. 1986). O. did not produce such evidence, but rather sought to prove that she had been sexually harassed by Barmore and raped. Sexual intercourse (including rape) is intentional. See, e.g., Barnes v. Barnes, 603 N.E.2d 1337, 1342 (Ind. 1992) (rape in a civil suit involved allegations of intentional felonious conduct). Furthermore, Indiana courts have stated that "[n]egligence and willfulness are incompatible terms. Negligence arises from inattention, thoughtlessness or heedlessness; while willfulness cannot exist without purpose or design." Koop, 502 N.E.2d at 118. Being incompatible, therefore, evidence supporting an intentional rape, even if demonstrated, would not serve to demonstrate negligent behavior under Indiana law. It was not error to grant judgment as matter of law on this claim either.
 
 
 15
 Finally, O. has raised two other issues in her brief: (1) that the district court erred in excluding certain evidence, and (2) that the district court erred in granting summary judgment in favor of Jerry Newell on her Sec. 1983 claim. But she failed in her brief to identify what evidence, if any, was improperly excluded and also failed to identify any errors committed by the district court in granting summary judgment, citing only the standard of review. O. also did not pursue these issues at oral argument, stating (through counsel) that she was appealing only the three issues already discussed. That is just as well. After review, we conclude that these last two issues are waived for failure to develop legal arguments and for failure to support those arguments with legal authority or citations to the record. Roland v. Langlois, 945 F.2d 956, 963 (7th Cir. 1991) (an appellate court reviews arguments; it does not construct them).
 
 III. Conclusion
 
 16
 For the foregoing reasons, the judgment of the district court is
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 The defendants originally named were: the Lake Central School Corporation, Dr. Thomas Roman, individually and as superintendent, Lake Central Board of School Trustees, Howard Marshall Jr., Jane Kinghorn, Deborah Phelps, Paul Freeland and William Klausman, individually and as members of the Board of School Trustees, Jerry Newell, individually and as principal of Lake Central High School, Linda Einsele, individually and as freshman principal of Lake Central High School, Thomas Linger, individually and as guidance counselor of Lake Central High School, and Matthew Barmore